**MATTHEW J. PLATKIN**
**ATTORNEY GENERAL OF NEW JERSEY**
R.J. Hughes Justice Complex
25 Market Street P.O. Box 093
Trenton, New Jersey 08625-0093
*Attorney for Plaintiffs*

By:   Gwen Farley
      Deputy Attorney General
      Attorney ID No. 000081999
      Ph. (609) 376-2740
      Gwen.Farley@law.njoag.gov

**KELLEY DRYE & WARREN LLP**
Special Counsel to the Attorney General
By:   Geoffrey W. Castello, Esq.
      One Jefferson Road
      Parsippany, New Jersey 07054
      Tel.: (973) 503-5900
      GCastello@KelleyDrye.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., <br><br>           Plaintiffs, <br> v. <br><br> E.I. DU PONT DE NEMOURS AND COMPANY, et al., <br><br>           Defendants. | Case Nos.:  2:19-cv-14758-RMB-JBC, 1:19-cv-14766-RMB-JBC, Civil Actions <br><br><br> **PLAINTIFFS' OMNIBUS REPLY IN SUPPORT OF MOTIONS FOR LEAVE TO FILE THIRD AMENDED COMPLAINTS** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................................................1

ARGUMENT ...........................................................................................................2

    I.      The Amendments Will Not Result in Prejudice ...................................2

    II.     Plaintiffs Have Not Unduly Delayed in Seeking to Amend.................7

    III.    Judicial Economy Weighs in Favor of Granting Leave to Amend ...............................................................................................10

    IV.    The Proposed Amendments Are Not Futile ......................................11

        A.    The TACs Satisfy Rule 8 Pleading Standards..........................12

        B.    The TACs Properly Allege That New DuPont and Corteva Contractually Assumed Old DuPont's Liability To Pay Penalties ........................................................................14

        C.    Plaintiffs Are Not Seeking Retroactive Penalties ...................22

CONCLUSION.......................................................................................................22

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................11, 12, 13

*In re Bristol-Myers Squibb Secs. Litig.*,
  228 F.R.D. 221 (D.N.J. 2005)................................................................................................2

*Conrad v. Lopez De Lasalle*,
  681 F. Supp. 3d 371 (D.N.J. 2023)........................................................................................3

*Dep't of Transp. v. PSC Res., Inc.*,
  175 N.J. Super. 447, 419 A.2d 1151 (Law. Div. 1980).......................................................21

*State of Ohio ex rel. DeWine v. E.I. du Pont de Nemours and Co.*,
  No. 180T32 (Ct. Common Pleas, Wash. Co. Aug. 4, 2021)
  (unpublished) ......................................................................................................................19

*Erickson v. Pardus*,
  551 U.S. 89 (2007).............................................................................................................11

*Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*,
  No. 15-5477, 2017 WL 4404567 (D.N.J. Oct. 4, 2017).......................................................6

*Formosa Plastics Corp., USA v. v. ACE Am. Ins. Co.*,
  259 F.R.D. 95 (D.N.J. 2009)................................................................................................6, 7

*Lorenz v. CSX Corp.*,
  1 F.3d 1406 (3d Cir. 1993) ................................................................................................10

*Marlowe Pat. Holdings LLC v. Dice Elecs., LLC*,
  293 F.R.D. 688 (D.N.J. 2013).........................................................................................3, 11

*Mullin v. Balicki*,
  875 F.3d 140 (3d Cir. 2017) .......................................................................................2, 3, 7, 10

*N.J. Dep't of Envt'l Prot. v. Monsanto Co.*,
  No. GLO-L-000800-22, 2023 WL 9420336
  (N.J. Super. L. Aug. 04, 2023).......................................................................................21, 22

ii

*Paxton v. Wash. Hosp. Ctr. Corp.*,
   299 F.R.D. 335 (D.D.C. 2014) ...............................................................10

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*,
   106 F. Supp. 2d 761 (D.N.J. 2000).........................................................11

*Phillips v. Cnty. of Alleghany*,
   515 F.3d 224 (3d Cir. 2008) ...................................................................13

*Popp Telcom v. Am. Sharecom, Inc.*,
   210 F.3d 928 (8th Cir. 2000) ....................................................................6

*Pub. Serv. Elec. & Gas Co. v. Cooper Indus., LLC*,
   678 F. Supp. 3d 611 (D.N.J. 2023)..........................................................21

*Ranginwala v. Citibank, N.A.*,
   No. 2:18-cv-14896, 2020 WL 525852 (D.N.J. Feb. 3, 2020) ..............................7

*Spartan Concrete Prods., LLC v. Argos USVI, Corp.*,
   929 F.3d 107 (3d Cir. 2019) ............................................................3, 8, 9

*Spiderplow, Inc. v. Site Energy*,
   No. 16-2318, 2017 WL 11477633 (D.N.J. Feb. 8, 2017)..................................5, 7

*State of New Hampshire v. 3M Co.*,
   No. 216-2019-CV-0045 (Super. Ct., Merrimack Co. July 8, 2021)
   (unpublished) ...................................................................................19

*State ex rel. Stein v. E. I. du Pont de Nemours & Co.*,
   382 N.C. 549 (2022) ............................................................................19

*United States v. M/V Cosco Busan*,
   557 F. Supp. 2d 1058 (N.D. Cal. 2008)......................................................12

*United States v. SB Bldg. Assocs., Ltd. P'ship*,
   No. CIV. 08-5298 (AET), 2009 WL 1559793
   (D.N.J. June 1, 2009) ...........................................................................12

**Statutes**

N.J.S.A. 58:12A-1, *et seq.* ..................................................................................2

N.J.S.A. § 58:12A-6(a) .......................................................................................13

N.J.S.A. § 58:12A-6(b) ....................................................................................14

**Other Authorities**

DUPONT, *DuPont Announces Plan to Separate into Three Independent, Publicly Traded Companies* (*available at* https://www.dupont.com/news/dupont-announces-plan-to-separate-into-three-independent-publicly-traded-companies.html) (last accessed July 14, 2024) ......................................................................15

Fed. R. Civ. P. 8 ...................................................................2, 12, 13

Fed. R. Civ. P. 12 ..............................................................................12

Fed. R. Civ. P. 12(b)(6).............................................................11, 12, 13

Fed. R. Civ. P. 12(e)...........................................................................13

Fed. R. Civ. P. 15 ...........................................................................2, 14

Fed. R. Civ. P. 15(a)............................................................................1

Fed. R. Civ. P. 30(b)(6)........................................................................6

Plaintiffs, the New Jersey Department of Environmental Protection ("NJDEP"), the Commissioner of the New Jersey Department of Environmental Protection, and the Administrator of the New Jersey Spill Compensation Fund (collectively, "Plaintiffs"), submit this omnibus Reply in further support of Plaintiffs' Motions for Leave to File Third Amended Complaints (CW Doc. 304; PLW Doc. 388[1]) ("Motions").

## PRELIMINARY STATEMENT

Defendants'[2] Oppositions (CW Doc. 319; PLW Doc. 401) fail to meet the high burden required to overcome the liberal amendment standard under Fed. R. Civ. P. 15(a). Defendants would face no prejudice from the amendments. Fact discovery is ongoing and not set to close until November, leaving Defendants the opportunity to take the discovery they purport to require to defend against the minimal changes set forth in the proposed Third Amended Complaints (CW Doc. 304-2, "CW TAC"; PLW Doc. 388-2, "PLW TAC"). Nor did Plaintiffs unduly delay in seeking these amendments, filing the Motions promptly and in accordance

---

[1] "CW Doc." refers to docket entries in C.A. No. 19-14766. "PLW Doc." refers to docket entries in C.A. No. 19-14758.

[2] "Defendants" herein refers collectively to EIDP, Inc. f/k/a E. I. du Pont de Nemours and Company ("Old DuPont"), The Chemours Company ("Chemours"), the Chemours Company FC, LLC, DuPont Specialty Products USA, LLC ("Specialty Products"), Corteva, Inc. ("Corteva"), and DuPont de Nemours, Inc. ("New DuPont"). 3M Company has not opposed Plaintiffs' request for leave to amend.

with Case Management Order No. 2 now that litigation has resumed and the justification for penalty claims (under the same statutes previously pled) against these Defendants is evident. Likewise, the justification for the additional claim relating to the New Jersey Safe Drinking Water Act, N.J.S.A. 58:12A-1 et seq. ("NJSDWA"), is evident given the U.S. Environmental Protection Agency's ("USEPA") recent adoption of national Maximum Contaminant Levels ("MCLs") for certain PFAS compounds at levels below New Jersey's MCLs for the same constituents, as well as new evidence of off-site PFAS contamination. Judicial economy also will be served by allowing these amendments. Finally, the amendments are not futile. Defendants have failed to show how the proposed claims do not meet Rule 8's notice standard. Moreover, New DuPont and Corteva contractually assumed Old DuPont's liability for the penalties at issue, and therefore the penalty claims against them do not fail as a matter of law.

## ARGUMENT

### I.     The Amendments Will Not Result in Prejudice

Defendants bear the burden to demonstrate prejudice under Rule 15. *In re Bristol-Myers Squibb Secs. Litig.*, 228 F.R.D. 221, 228 (D.N.J. 2005). Defendants fail to show any prejudice that warrants denial of this Motion. "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017) (quotation omitted). In determining what

constitutes prejudice, courts consider whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Marlowe Pat. Holdings LLC v. Dice Elecs., LLC*, 293 F.R.D. 688, 695 (D.N.J. 2013) (cleaned up). Prejudice only "becomes 'undue' when the opponent shows it would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered.'" *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371, 383 (D.N.J. 2023) (quotations omitted). Examples include "the irretrievable loss of evidence, the dimming of witnesses' memories, or the excessive irremediable burdens or costs imposed on the non-moving party if an amendment is granted." *Id.* (quotations omitted). Having to "expend additional effort were amendment allowed" does not constitute undue prejudice. *Mullin*, 875 F.3d at 157. Defendants have failed to demonstrate any prejudice from the proposed amendments.

The proposed amendments also would not cause "fundamental alteration" of the claims as Defendants assert. (CW Opp. at 7; PLW Opp. at 6). A fundamental alteration would include new claims based on "new, previously unknown, and unsuspected facts" that "would require different discovery" than that already conducted. *See Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107,

3

117 (3d Cir. 2019). As Defendants acknowledge (CW Opp. at 6; PLW Opp. at 4), Plaintiffs have not altered the underlying facts in the TACs.

Defendants' outcry of hardship is unsupportable, and their explanation of the case schedule is misleading. These cases were stayed for 14 months, from March 2023 through May 2024, pending Court-ordered mediation before U.S. Magistrate Judge Joel Schneider (Ret.) that resulted in an impasse. (PLW Docs. 351, 353, 371). Defendants were well aware of Plaintiffs' intent to seek this amendment prior to resuming litigation, which is why Judge Schneider addressed Plaintiffs' request for leave to file this Motion at the May 2, 2024 conference. (PLW Doc. 381 ("CMO 2") ¶ 2(a)). The briefing schedule for this Motion was set concurrently with other pretrial deadlines and Plaintiffs have adhered to that schedule. Plaintiffs sent Defendants a preliminary redline of the proposed CW TAC on May 1, 2024—which included the proposed revisions of the Industrial Site Recovery Act ("ISRA") count (Third Count). (CW Doc. 304-1 ¶ 5). Plaintiffs then sent an updated redline with the complete set of revisions that are now before the Court on May 20. (*Id.*) Any delay in this briefing schedule has been caused by Defendants—who waited 3½ weeks after receiving the redline to notify the parties of its opposition to the Motions, then requested additional time to file those oppositions. Moreover, Defendants' recitation of discovery disputes from 2022 ignores that the parties issued supplemental written discovery on May 28, 2024—after Plaintiffs

4

filed these Motions—and that parties may seek leave to serve additional discovery for good cause. (CMO 2 ¶ 2(a)-(b)).

Defendants have not described how adding a category of damages to Plaintiffs' complaints would create the need for *any* additional discovery—let alone discovery that could not be completed in a five-month fact discovery period. *See Spiderplow, Inc. v. Site Energy*, No. 16-2318, 2017 WL 11477633, at *3 (D.N.J. Feb. 8, 2017) ("Plaintiff has not explained how [the litigation] expenses would be any different from those it would have faced if Defendant included its fraud claim in the first iteration of its pleading."). Defendants' assertion that they will have to shift their discovery focus from future remediation needs to their own past regulatory compliance (CW Opp. at 7; PLW Opp. at 6) does not show prejudice. Defendants' regulatory compliance has *always* been at issue in these cases. (*See, e.g.*, CW Doc. 57 ¶¶ 304-305, 319-320, 334, 367-369; PLW Doc. 61 ¶¶ 107-120).

In fact, Defendants base their argument of delay on the fact that Plaintiffs are *not* proposing additional factual allegations (CW Opp. at 6; PLW Opp. at 5)—which belies their objection that the new penalty damages somehow require new discovery previously not at issue. (CW Opp. at 7; PLW Opp. at 6). Indeed, their concession that additions to the factual allegations for the TACs have been "de minimis" (CW Opp. at 6; PLW Opp. at 5) negates any claim of prejudice

Defendants have asserted. *See Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party."). Moreover, if Defendants did need additional written discovery as a result of these amendments, they can seek leave.[3] *See, e.g.*, *Formosa Plastics Corp., USA v. v. ACE Am. Ins. Co.*, 259 F.R.D. 95, 99 (D.N.J. 2009) ("[T]he proposed amendment will not significantly delay resolution of the action, as fact discovery remains ongoing at this point.").

Even if Defendants had made such a showing, their argument is undermined given that substantial fact discovery remains to be completed. *See, e.g.*, *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2017 WL 4404567, at *2 (D.N.J. Oct. 4, 2017) (finding no undue delay where motion to amend was filed two years after the original complaint but with nearly five months left in the discovery period). Indeed, the parties are still negotiating search parameters, as well as non-custodial data sources—both topics addressed by Judge Schneider, as Special Master, at the most recent conference on July 1, 2024. Further, not a single fact deposition has been noticed yet. Given the current procedural posture of this

---

[3] Plaintiffs do not concede that any additional discovery is warranted for the limited amendments proposed. The allegations underlying the penalty claims were in the Second Amended Complaint, and Defendants had notice of these proposed amendments before serving their supplemental discovery requests or Rule 30(b)(6) topics pursuant to Case Management Order No. 2. (CMO 2 ¶ 2(a)-(b)).

6

case, any purported prejudice to Defendants arising from the amendment can be remedied without changing the scheduling order.

## II.    Plaintiffs Have Not Unduly Delayed in Seeking to Amend

Defendants also have not shown that Plaintiffs unduly delayed in seeking these amendments. "The issues of undue delay and undue prejudice overlap somewhat, as delay generally cannot be undue unless it has caused some prejudice to the non-moving party." *Formosa Plastics Corp.*, 259 F.R.D. at 99. There is "no presumptive period in which . . . delay becomes 'undue.'" *Mullin*, 875 F.3d at 151. Thus, "the question of undue delay requires that [the court] focus on the movant's reasons for not amending sooner while bearing in mind the liberal pleading philosophy of the federal rules." *Id.* (citations omitted). Delay may be "undue" if it "places an unwarranted burden on the court or on the opposing party." *Ranginwala v. Citibank, N.A.*, No. 2:18-cv-14896, 2020 WL 525852, at *2 (D.N.J. Feb. 3, 2020); *see also Spiderplow, Inc.*, 2017 WL 11477633 (no undue delay where amendment was sought before the scheduling order deadline). "[U]nless the delay at issue will prejudice the non-moving party, a movant need not establish a compelling reason for its delay." *Formosa Plastics Corp.*, 259 F.R.D. at 100.

Defendants' recitation of the background leading to this Motion omits several key facts that explain why Plaintiffs did not seek this amendment sooner. Prior to and since instituting these lawsuits, Plaintiffs have worked diligently to

attempt to bring Defendants into compliance with this State's environmental laws, including through this lawsuit, mediation proceedings, and regulatory action. Defendants have responded with nothing but recalcitrance and delay, as described in prior correspondence to the Court. (*See, e.g.*, PLW Doc. 215 (detailing Defendants' years-long failure to post a sufficient remedial funding source, necessitating Plaintiffs' motion for a preliminary injunction)). Before the Court stayed these cases for mediation, the parties spent over a year litigating Plaintiffs' preliminary injunction motion, through which the extent of Defendants' failure to properly remediate the Chambers Works site became evident. (*See, e.g.*, Ex. A at 178:18-22, 345:12-346:19 (Defendants' expert admits that they only "visually inspected" ditch systems, without testing for chemicals that are not visible)). And now, over a year after this Court ordered the parties to mediation, the parties are back in litigation with no progress made in bringing Plaintiffs' claims to a conclusion. This history of obstruction and delay *by Defendants* brought Plaintiffs to the decision-point of seeking to add penalty claims here.

Plaintiffs do not assert penalties lightly, but recently obtained data and facts demonstrating that penalties are absolutely appropriate here. Defendants' reliance on *Spartan Concrete Prods.*, 929 F.3d 107, to support their argument to the contrary is misplaced. There, the plaintiff sought to amend after the close of discovery, arguing that documents the defendant produced at the end of the

8

discovery period gave rise to new claims. *Id.* at 116. The court found that the plaintiff was "equally responsible" for the delay in document productions, having "stood idle while discovery deadlines passed" without moving for compliance. *Id.* at 116. No such situation exists here; discovery is in its initial stages, and any additional discovery needed on the amendments can be done in the discovery period. Plaintiffs therefore have not unduly delayed in seeking these amendments and have provided reasonable explanation of their timing in doing so.

In addition, Plaintiffs did not delay in bringing its NJSDWA claim. (*See* CW Opp. at 1, 6). Plaintiffs' ongoing investigation of the extent of harm caused by Defendants' operations at the Chambers Works facility—necessitated by Defendants' failure to properly investigate—has revealed more extensive reaches of off-site contamination than previously understood. That data, which Plaintiffs produced to Defendants, was not finalized until June 2023—after the mediation stay was already in place. It is only now that the stay has been lifted, that Plaintiffs may seek to add the NJSDWA claim. In addition, during the mediation stay, USEPA published a final rule adopting, *inter alia*, MCLs for PFOA and PFOS at 4 part per trillion ("ppt"), materially lower than NJDEP's existing MCL levels of 14 ppt for those compounds. These circumstances provide ample justification for the addition of the NJSDWA claim at this time.

9

By contrast, in *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993), cited by Defendants, the Third Circuit ruled that the plaintiff had unreasonably delayed in seeking an amendment because it fully possessed all factual information it needed to bring the claims at the beginning of the case. Where, as here, plaintiffs come into possession of new facts supporting amendment to add claims based on those facts, courts routinely grant leave to amend. *See, e.g.*, *Paxton v. Wash. Hosp. Ctr. Corp.*, 299 F.R.D. 335 (D.D.C. 2014). In short, Plaintiffs have not unduly delayed in seeking any of the proposed amendments.

## III.    Judicial Economy Weighs in Favor of Granting Leave to Amend

Judicial economy "is uncommonly a factor that stands entirely alone, separate and apart from prejudice and factors relevant to whether a delay was 'undue.'" *Mullin*, 875 F.3d at 157. In evaluating judicial economy, considerations include judicial efficiency and effective case management. *Id.* "[F]ocus on the past inappropriately constrains the scope of the judicial economy inquiry." *Id.* at 158. Defendants have not shown any judicial inefficiency or impediments to effective case management that permitting the instant amendments would cause. Indeed, the Court already considered these amendments and set a schedule for Defendants to respond if leave is granted. (CMO 2 ¶ 2(a)).

10

## IV.     The Proposed Amendments Are Not Futile

In determining futility, courts apply the same standard of legal sufficiency as under Rule 12(b)(6) to the extent that, if the proposed amendment is "frivolous or advances a claim or defense that is legally insufficient on its face," the court may deny leave to amend, but where the proposed amendment is "not clearly futile, denial is improper." *Marlowe Pat. Holdings*, 293 F.R.D. at 695 (cleaned up). "[C]ourts place a heavy burden on opponents who wish to declare a proposed amendment futile." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000).[4] Under Rule 12(b)(6), a motion to dismiss will be denied where a Plaintiff articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 (2007). When determining whether a claim should be dismissed under Rule 12(b)(6), the court accepts as true all of the allegations contained in the complaint and draws reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Defendants have not met their burden under either standard.

---

[4] Defendants do not argue that the amendments related to the Chambers Works Third Count (ISRA) or Pompton Lakes Eleventh Count (Abnormally Dangerous Activity) are futile. Instead, Defendants appear to only take issue with the TACs to the extent they seek to add Count 18 (NJSDWA) and penalties under Chambers Works Counts 1 (Spill Act), 2 (WPCA), and 4 (Brownfield Act) (CW Opp. at 9-10) and Pompton Lakes Counts 1 (Spill Act) and 2 (WPCA) (PLW Opp. at 8-9).

### A.    The TACs Satisfy Rule 8 Pleading Standards

The crux of Defendants' futility argument is that the proposed amendments do not detail "what discharges or emissions gave rise to the violations" or "when these civil penalties began to accrue." (CW Opp. at 9; PLW Opp. at 8). But Defendants' Responses are void of any case law supporting their contention that under Rule 8 (or Rule 12(b)(6), for that matter), Plaintiffs were required to detail how this damages category should be calculated, likely because *Twombly*'s pleading standard does not require such precision. *See, e.g.*, *United States v. SB Bldg. Assocs., Ltd. P'ship*, No. CIV. 08-5298 (AET), 2009 WL 1559793, at \*3 (D.N.J. June 1, 2009) (finding plaintiff met its burden under *Twombly* in pleading civil penalties under CERCLA); *United States v. M/V Cosco Busan*, 557 F. Supp. 2d 1058, 1065 (N.D. Cal. 2008) (finding that government sufficiently pled claim under Rule 8 without providing a "sum certain" or "amount 'up to'" for civil penalties).

Defendants have not shown how Plaintiffs fail to satisfy the pleading standard under Rule 8 or how the additional allegations would be subject to dismissal under Rule 12—presumably because, in all but one instance, the amendments relate to remedial statutes that existed in prior iterations of the complaints and have survived Motions to Dismiss. Instead, Defendants conflate

12

their futility argument with what appears to be a request for a more definite statement under Rule 12(e).

Nonetheless, each TAC (like its related Second Amended Complaint) lays out the decades of misconduct by Defendants at these sites that form the basis for the penalty claims—more than satisfying the notice pleading standard under Rule 8 and *Twombly*. (*See, e.g.*, CW TAC ¶¶ 81-106, 149-158, 187-196, 312-321, 334-340, 367-376; PLW TAC ¶¶ 82-108, 235-241, 252-259).[5] Defendants' additional argument that their discharges were permitted (CW Opp. at 9-10) at best previews their anticipated defense(s)—which Plaintiffs contest—but does not render Plaintiffs' claims "legally insufficient" or "frivolous."

Further, regarding the NJSDWA claim, the elements are squarely met and, accepting all allegations as true, Defendants have not shown any basis of a Rule 12(b)(6) motion. Under the NJSDWA, the Commissioner may institute an action to protect the public from imminent and substantial endangerment to its health where he deems such actions to be "necessary in order to protect the health of such persons." N.J.S.A. § 58:12A-6(a). Under this provision, the Commissioner is authorized in part to "commenc[e] a civil action for appropriate relief, including a

---

[5] Defendants' quotation from *Phillips v. Cnty. of Alleghany*, 515 F.3d 224 (3d Cir. 2008), misses context. There, the court found that "the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* at 232. Such is not the case here. The factual background to Plaintiffs' claims (as originally pled and as amended) are set forth in over 68 pages, and an additional 60 pages of counts.

13

restraining order or permanent or temporary injunction." N.J.S.A. § 58:12A-6(b). As alleged in the proposed CW TAC, the Commissioner has made such a determination here in light of the many exceedances of MCLs, thereby satisfying the predicate for commencing a civil action to enforce the NJSDWA. Because they have not shown how the proposed amendments are futile, Defendants fail to defeat the liberal amendment standard under Rule 15.

### B.    The TACs Properly Allege That New DuPont and Corteva Contractually Assumed Old DuPont's Liability To Pay Penalties

Defendants incorrectly argue that Plaintiffs' claims for penalties against New DuPont and Corteva are futile because Plaintiffs do not allege that these two defendants violated New Jersey's environmental statutes themselves. (CW Opp. at 10; PLW Opp. at 10). Defendants are wrong. As alleged in each TAC, New DuPont and Corteva each contractually assumed Old DuPont's historic liabilities at both Chambers Works and Pompton Lakes, including for penalties arising from Old DuPont's conduct. (CW TAC ¶ 327; PLW TAC ¶ 170). Defendants are therefore directly liable for the penalties as a matter of law, regardless of their own conduct at the sites.

New DuPont and Corteva were formed as part of Old DuPont's multi-year restructuring plan that gives rise to Plaintiffs' successor liability and fraudulent transfer claims. In 2015, Old DuPont sought to wash its hands of both Chambers Works and Pompton Lakes when it (i) transferred the facilities and the rest of its

14

Performance Chemicals business to its wholly owned subsidiary, defendant Chemours, and then (ii) spun off Chemours as a separate public company. (CW TAC ¶ 214; PLW TAC ¶ 142). After Old DuPont shed Chemours (and the New Jersey facilities along with it), Old DuPont formed a new company, defendant New DuPont, to facilitate a merger with the Dow Chemical Company ("Old Dow"). (CW TAC ¶ 217; PLW TAC ¶ 145). Over the following years, New DuPont restructured Old Dow and Old DuPont's assets and formed two new companies— Dow Inc. ("New Dow") and defendant Corteva—to hold the restructured business lines. (CW TAC ¶ 220; PLW TAC ¶ 148). In April 2019, New DuPont spun off New Dow, and in June 2019, New DuPont spun off Corteva (which is now Old DuPont's corporate parent) as separate companies. (CW TAC ¶¶ 269-270; PLW TAC ¶¶ 197-198).[6]

The spinoffs were effectuated pursuant to an April 2019 DowDuPont Separation Agreement (the "Separation Agreement") that was amended in part by a June 2019 Letter Agreement. (CW TAC ¶ 271; PLW TAC ¶ 199). Pursuant to the

---

[6] Defendants continue to divest assets through further restructurings even while these cases are pending, leaving fewer assets available for creditors. On May 22, 2024, New DuPont announced its intention to further separate into three independent companies via tax-free spinoffs by June 2026, and to divest approximately 45% of its assets through these transactions. DUPONT, *DuPont Announces Plan to Separate into Three Independent, Publicly Traded Companies* (*available at* https://www.dupont.com/news/dupont-announces-plan-to-separate-into-three-independent-publicly-traded-companies.html) (last accessed July 14, 2024).

unambiguous terms of these agreements, New DuPont and Corteva each contractually assumed Old DuPont's historic liabilities related to the Performance Chemicals business that it transferred to Chemours in 2015, including for penalties arising from (i) Old DuPont's historic operation of both Chambers Works and Pompton Lakes; and (ii) its discharge of PFAS in New Jersey. (CW TAC ¶¶ 272-274; PLW TAC ¶¶ 200-202).

Under Section 2.2(c) of the Separation Agreement, titled "Assumption of Liabilities," New DuPont assumed all "Specialty Products Liabilities" and Corteva assumed all "Agriculture Liabilities." (Ex. B, § 2.2(c)). The Separation Agreement defines the Specialty Products Liabilities and the Agriculture Liabilities to include "Specialty Products DuPont Discontinued and/or Divested Operations and Business Liabilities" and "Agriculture DuPont Discontinued and/or Divested Operations and Business Liabilities," respectively. (*Id.* §§ 1.1(309), 1.1(306); 1.1(38), 1.1(34)).[7] Those terms, in turn, are ultimately defined to incorporate "DuPont Discontinued and/or Divested Operations and Business Liabilities." (*Id.* §§ 1.1(306)(c), 1.1(291)(i); 1.1(34)(c), 1.1(15)(i)).[8]

---

[7] In both instances, these terms expressly include liabilities that "do" and "do not" constitute Environmental Liabilities." (Ex. B, §§ 1.1(309)(ix)-(x); 1.1(38)(ix)-(x)).

[8] The terms "Agriculture DuPont Discontinued and/or Divested Operations and Business Liabilities" and "Specialty Products DuPont Discontinued and/or Divested Operations and Business Liabilities are defined to include "Agco Group Excess DuPont Discontinued and/or Divested Operations and Business Liabilities" and "SpecCo Group Excess DuPont Discontinued and/or Divested Operations and

The Separation Agreement defines the "DuPont Discontinued and/or Divested Operations and Business Liabilities" to include "any and all Liabilities to the extent arising out of or related to any Discontinued and/or Divested Operations and Businesses of any member (at any point in time) of Historical DuPont (or any of their respective predecessors), including those set forth on Schedules 1.1(15) . . . and 1.1(291)[.]" (*Id.* § 1.1(102)). Schedule 1.1(15) includes "any and all Liabilities to the extent arising out of, relating to or resulting from . . . Historical DuPont's Performance Chemicals segment to the extent spun-off in 2015 as The Chemours Company, including the 'Chemours Business' or the 'Chemours Liabilities' . . ., and also including . . . any and all Liabilities of Historical DuPont to the extent resulting from, arising out of or related to the development, testing, manufacture or sale of [PFOA]." (Ex. C, Sched. 1.1(15)). Schedule 1.1(291) incorporates those same Old DuPont liabilities by reference. (Ex. D, § 1.01, Sched. I § 1(d), App'x 1.1(291)(31)).

Chambers Works and Pompton Lakes are both part of the Performance Chemicals business that Old DuPont spun off to Chemours in 2015, and the "Chemours Liabilities" are defined in the Chemours Separation Agreement to include any and all liabilities related to Old DuPont's operation of the businesses

Business Liabilities" respectively. (Ex. C, §§ 1.1(34)(c); 1.1(306)(c)). Those terms are each defined to include "DuPont Discontinued and/or Divested Business Liabilities," other than certain specified liabilities that are not at issue here. (*Id.* §§ 1.1(15)(i); 1.1(291)(i)).

17

spun off to Chemours—including at Chambers Works and Pompton Lakes Works. (Ex. E, § 1.1(34); CW TAC ¶ 241; PLW TAC ¶ 170). Accordingly, under the DowDuPont Separation Agreement, New DuPont and Corteva are each liable for Old DuPont's historic environmental liabilities at Chambers Works and Pompton Lakes (including, but not limited to, Old DuPont's historic environmental liabilities related to PFOA).

In June 2019, New DuPont and Corteva executed the Letter Agreement, which made explicit their assumption of PFAS liabilities under the Separation Agreement. The Separation Agreement also defines Corteva's "Agriculture Liabilities" and New DuPont's "Specialty Products Liabilities" to include "any of the Liabilities set forth on Schedule 1.1(38)(vii)" and "Schedule 1.1(309)(vi)" respectively. (Ex. B, §§ 1.1(38)(vii), 1.1(309(vi)). In the Letter Agreement, New DuPont and Corteva amended these schedules to specifically include any and all "Liabilities" and "Indemnifiable Losses" from "DuPont Discontinued and/or Divested Operations and Business Liabilities . . . to the extent related to, arising out of or Resulting from the **development, testing, manufacture or sale of per- or polyfluoroalkyl substances [i.e., PFAS].**" (Ex. D, § 1.01, Sched. I §§ 2(a)(3)(a) & 2(b)(2)(a)) (emphasis added). There is thus no doubt that the liabilities described

18

in Schedules 1.1(309)(vi) and 1.1(38)(vii) include PFAS liabilities at Chambers Works.[9]

Indeed, other courts that have analyzed these provisions of the Separation Agreement and Letter Agreement have concluded that they make New DuPont and Corteva directly liable for Old DuPont's PFAS liabilities. *See State ex rel. Stein v. E. I. du Pont de Nemours & Co.*, 382 N.C. 549, 563 (2022) ("[It is] clear that by execution of the DowDuPont Separation Agreement and the Letter Agreement, Corteva and New DuPont assumed certain liabilities related to Old DuPont's manufacturing of PFAS"); *State ex rel. Stein v. E. I. du Pont de Nemours & Co.*, 2024 NCBC 5 (N.C. Super. Ct. 2024) ("[I]f Old DuPont is found to have liability for the use, manufacture and discharge of PFAS, Corteva and New DuPont will be held liable [as well] as a result of, and limited to, the assumed contractual obligations under the Agreements[.]").[10]

The Separation Agreement also makes clear that New DuPont and Corteva's contractual assumption includes Old DuPont's liabilities for civil penalties: defining the "Liabilities" these Defendants assumed to include any and all

_____

[9] As alleged in each TAC, Corteva assumed 29% of Old DuPont's liabilities at Chambers Works and Pompton Lakes and New DuPont assumed 71% so together, they assumed 100%. (CW TAC ¶ 274; PLW TAC ¶ 202).

[10] *See also State of New Hampshire v. 3M Co.*, No. 216-2019-CV-0045 (Super. Ct., Merrimack Co. July 8, 2021) (unpublished) (PLW Doc. 143); *State of Ohio ex rel. DeWine v. E.I. du Pont de Nemours and Co.*, No. 180T32 (Ct. Common Pleas, Wash. Co. Aug. 4, 2021) (unpublished) (PLW Doc. 153).

19

"Damages," which in turn is defined to include "**fines**" and "**penalties**," including those that may arise under any "Environmental Law." (Ex. B, §§ 1.1(164), 1.1(77)). The term "Indemnifiable Losses" also is defined to include "any and all Damages . . . [and] **penalties** . . . ." (*Id.* at § 1.1(144)). Defendants (other than DSP) obviously agree that New DuPont and Corteva assumed Old DuPont's liability for penalties. They subsequently agreed in a January 2021 Memorandum of Understanding ("MOU") between and among New DuPont, Corteva, Old DuPont and Chemours that "[New] DuPont/Corteva [would] pay ISRA fines/penalties directed to [Old DuPont]." The MOU settled a 2019 lawsuit that Chemours filed against Old DuPont, New DuPont, and Corteva, alleging that Old DuPont "systematically and spectacularly" underestimated the liabilities that it "dumped" on Chemours during the spinoff, such that Chemours could not have been solvent at the time of the spinoff if required to satisfy the true value of its indemnification obligations to Old DuPont. (Ex. F ¶¶ 2, 59, 63, 78-119; CW TAC ¶ 245; PLW TAC ¶ 173). The parties settled Chemours's claims pursuant to the MOU, under which they agreed to a 50-50 split of certain PFAS liabilities transferred to Chemours during the spinoff, to be borne by Chemours on the one hand and Old DuPont, New DuPont, and Corteva on the other—including for fines and penalties, other than those arising under ISRA, which were to be borne by Old

20

DuPont, New DuPont, and Corteva, without indemnification by Chemours. (Ex. G at A-11).

Defendants' argument that they cannot be responsible for penalties, notwithstanding their contractual assumption, because the New Jersey environmental statutes at issue require proof of a violation (CW Opp. at 12-13; PLW Opp. at 10-11) is meritless. New Jersey courts have long recognized that corporate successors may be directly liable under New Jersey environmental statutes for their predecessor's conduct. *See, e.g.*, *Pub. Serv. Elec. & Gas Co. v. Cooper Indus., LLC*, 678 F. Supp. 3d 611, 622 (D.N.J. 2023) ("Cooper, as corporate successor to Wiss, may be held liable for any discharge of hazardous material by Wiss."); *Dep't of Transp. v. PSC Res., Inc.*, 175 N.J. Super. 447, 467, 419 A.2d 1151, 1162 (Law. Div. 1980) (corporate successor is liable for "any claims against it arising from the discharge of pollutants" of predecessor in action under the Water Quality Improvement Act, the Spill Compensation and Control Act, and the Environmental Rights Act). Indeed, in *N.J. Dep't of Envt'l Prot. v. Monsanto Co.*, No. GLO-L-000800-22, 2023 WL 9420336, at *13 (N.J. Super. L. Aug. 04, 2023), the court denied a motion to dismiss claims for penalties under the same statutes at issue here against Solutia, which had contractually assumed Old Monsanto's liabilities in a corporate restructuring. The court also rejected the defendants' argument "that because they are successor to Old Monsanto that

21

punitive damages would not attach," holding that "punitive liability can be passed down to successors just like other liability." *Id.* at 13. It is therefore beyond doubt that New DuPont and Corteva may be liable for penalties based on Old DuPont's historical conduct.

### C.    Plaintiffs Are Not Seeking Retroactive Penalties

Defendants' final argument—that Plaintiffs cannot seek penalties in connection with acts predating the enactment of each statute—is irrelevant, as Plaintiffs nowhere pled that they are seeking retroactive penalties. *See also Monsanto Co.*, 2023 WL 9420336, at *9 (denying dismissal of penalty claims as retroactive where the State argued that "the penalties are not for the discharge itself, but rather, for the failure to report the discharges.").

## CONCLUSION

For the foregoing reasons and those set out in the Motions, Plaintiffs respectfully request that the Motions be granted.

Dated: July 15, 2024                    Respectfully submitted,

                                        **MATTHEW J. PLATKIN**
                                        **ATTORNEY GENERAL OF NEW**
                                        **JERSEY**
                                        *Attorney for Plaintiffs*

                                        By: */s/ Gwen Farley*
                                        Gwen Farley
                                        Deputy Attorney General
                                        R.J. Hughes Justice Complex
                                        25 Market Street
                                        P.O. Box 093
                                        Trenton, New Jersey 08625-0093
                                        Ph. (609) 376-2740
                                        gwen.farley@law.njoag.gov
                                        **KELLEY DRYE & WARREN LLP**
                                        *Special Counsel to the Attorney General*

                                        By: */s/ Geoffrey W. Castello*
                                        Geoffrey W. Castello, Esq.
                                        One Jefferson Road
                                        Parsippany, New Jersey 07054
                                        Tel.: (973) 503-5900
                                        GCastello@KelleyDrye.com

                                        *William J. Jackson, Esq.
                                        *John D.S. Gilmour, Esq.
                                        *Lana M. Rowenko, Esq.
                                        *Jennifer C. Barks, Esq.
                                        515 Post Oak Blvd. Suite 900
                                        Houston, Texas 77027
                                        Ph. (713) 355-5000

23

*David Zalman, Esq.
David M. Reap, Esq.
*William A. Escobar, Esq.
Daniel J. Harrison, Esq.
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel.: (212) 808-7800
DReap@KelleyDrye.com

**LAW OFFICES OF JOHN K. DEMA, P.C.**
*Special Counsel to the Attorney General*

By:    *John K. Dema, Esq.
         Scott E. Kauff, Esq.
         *John T. Dema, Esq.
         *Briana Dema, Esq.
         Alex Latanision, Esq.
         *Elizabeth B. Petersen, Esq.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820-5034
Ph. (340) 773-6142

**TAFT STETTINIUS & HOLLISTER LLP**
*Special Counsel to the Attorney General*

*Robert A. Bilott, Esq.
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
bilott@taftlaw.com

24

*David J. Butler, Esq.
41 S. High Street, Suite 1800
Columbus, OH 43215-6106
Telephone: (614) 221-2838
Facsimile: (614) 221-2007
dbutler@taftlaw.com

**COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP**
*Special Counsel to the Attorney General*

Leonard Z. Kaufmann, Esq.
A Member of the Firm
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Ph. (201) 845-9600

*\* admitted pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 15, 2024, copies of the foregoing Reply in Support of Motion for Leave to File Third Amended Complaint in this matter was filed electronically. Notice of this filing will be sent to these parties by operation of the Court's Electronic Filing System.

/s/ Geoffrey W. Castello
Geoffrey W. Castello

25