Tyler E. Baker (NJ Bar No. 44392011)
Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112
Tel. (212) 653-8700
Fax. (212) 653-8701
tbaker@sheppardmullin.com
*Attorneys for The Society for Earth Law, as Amicus*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; et al., <br> *Plaintiffs*, <br> v. <br> E.I. DU PONT DE NEMOURS AND COMPANY; et al. <br> *Defendants,* | Case No.: <br> 1:19-cv-14758-RMB-JBC (Pompton Lakes) <br> 1:19-cv-14765-RMB-JBC (Repauno) <br> 1:19-cv-14766-RMB-JBC (Chambers Works) <br> 1:19-cv-14767-RMB-JBC (Parlin/Sayreville) <br><br> Hon. Renée Marie Bumb, Chief U.S.D.J. <br> James B. Clark, III, U.S.M.J. |

**AMICUS BRIEF**
**IN SUPPORT OF INTERVENOR CARNEYS POINT TOWNSHIP'S**
**REQUEST FOR A WRIT OF MANDAMUS**

**SUBMITTED BY:**
**THE SOCIETY FOR EARTH LAW,**
**A DIVISION OF THE CENTER FOR ECOZOIC STUDIES**

1

## SUBMISSION OF AMICUS

The Society for Earth Law ("SOEL"), as Amicus, makes this submission in support of the application of Intervenor, Carneys Point Township ("Carneys Point" or "Township"), for a Writ of Mandamus to modify the Judicial Consent Order in this matter to assure that natural resource damages ("NRD") are credited and deposited to the legislative account that is specifically dedicated to repairing, restoring, and replacing lost and damaged natural resources within pollution-impacted municipalities like Carneys Point on a first priority basis as required by law.

In particular, Carneys Point has provided this Court with a report prepared by the TBLS Group that sets forth in detail the Township's proposed plan to heal the PFAS pollution impacting thousands of meadowland acres located around and within the Chambers Works site using innovative strategies developed by professors at Princeton University and Montclair State University. These strategies resulted in the New Jersey Department of Environmental Protection ("DEP") presenting these professors with awards for their innovative thinking.

Restoring these acres and wildlife habitats are exactly what the DEP and SOEL must ensure. The problem, as discussed by Carneys Point, is that this healing can only occur if the Natural Resources Damanges ("NRD") settlement funds generated by this settlement are credited and deposited in a dedicated legislative NRD account as required by law.

Carneys Point is challenging the legal underpinnings for the misdirection of settlement funds here. SOEL is advocating for the correct deposit of these funds so they can be used for the greater good outlined in the TBLS restoration projects report. These projects actualize the principles espoused by SOEL and the DEP. However, these projects can only be constructed if the money dedicated for their construction is properly credited and deposited as required by law.

In order to understand why we are making this Amicus submission in support of Intervenor, it is, of course, important to understand as a threshold matter who we are and what we have to offer to the Court in addressing Intervenor's application for a Writ of Mandamus. We hope to provide the Court with helpful insights that will not only support Intervenor's legal points (which we believe are compelling based on a straightforward reading of the law), but will place those points in a larger, more compelling and relevant legal and social context.

## INTRODUCTION:
## THE LARGER IMPORTANCE OF THIS CASE

In this precedent setting environmental enforcement action and settlement, we ask the Court to expressly acknowledge that this case involves not merely important procedural technicalities, but that this case also reflects the broader need for society-wide healing of our broken relationships with each other and with the greater community of life around us. Such healing must be rooted in a true renaissance of values, not just politically and socially, but legally as well, and a commitment to principles of environmental justice.

Here, as discussed in more detail below, SOEL believes such a renaissance of values, and such a commitment to environmental justice, are reflected in the 2017 New Jersey Natural Resources Damages Amendment, which reflects a political and social commitment in New Jersey and which the Court can and should acknowledge. Indeed, if the Court chooses to affirmatively use the language of healing, reverence and environmental justice (as reflected in SOEL's Guiding Principles as outlined below), the Court will have at its disposable an expanded lens not only to address the procedural issues raised by Intervenor but important insights to more deeply interpret and opine on the importance of the Natural Resources Damages Amendment as reflecting broader societal concerns and values. In this regard, the words any court chooses to use can influence how

3

the larger society views its own laws and how society chooses to make key decision concerning all aspects of our individual and collective lives.

The law, of course, is built on the power of language and on the use of carefully defined words and concepts, and the law can expressly reflect a deeper, more compassionate set of social, political and legal guiding values.  If the Court here chooses to affirmatively use the language of healing, reverence and justice, it will help to expand the lens we all look through in examining legal, political and economic issues, and in addressing the concomitant problems and challenges.

### 1.    WHO WE ARE AND OUR GUIDING PRINCIPLES

SOEL is a recently formed division of the Center for Ecozoic Studies; and, as such, it is quickly growing into an international network of students, lawyers, educators and citizens. Frustrated by the legal system's ongoing failure to address escalating climate and ecological crises, SOEL calls for a bold shift in our legal frameworks to recognize Earth not as property or a storehouse of resources, but as a living, interconnected community of which humanity is one member.  SOEL envisions a world where legal, economic, social, and political systems are rooted in a shared commitment to nurture, regenerate, and sustain the Earth community.

Our members share a number of simple but profound guiding principles (the "Guiding Principles") that, we submit, are directly relevant to the Court's analysis of the law and its ultimate decision in this matter:

First, we believe that the Rule of Law must be grounded in a respect – and, indeed, a reverence – not only for the equal dignity of all people, but for the inherent value and worth of all life, human and non-human.  The law must therefore serve and protect all life in addition to, but not merely limited to, service to and protection of human interests.  In short, we have responsibilities to each other and to the greater community of life in which we are imbedded. This

4

guiding "Principle of Responsibility" is not only for SOEL members  to embrace as a central proposition for our mission, but is also a fundamental principle that needs to guide the Rule of Law itself, guide this Court's decision in this matter, and govern the scope and manner of the exercise of discretion by the Department of Environmental Protection (the "Department").

This Principle or Responsibility is thus at the  core of this matter and the need to ensure (1) that Settlement Payments are allocated and used to remediate the harm to Carneys Point Township; and (2) that the Payments are not diverted in the unbridled discretion of the Department to other projects not necessarily covered by the settlement between the parties.

Second, in committing ourselves to our collective responsibilities to each other and to the greater community of life, we need to acknowledge in our legal proceedings – including in the present matter before the Court – the following additional fundamental Guiding Principles:

1)      We are one humanity that is an integral part of the greater community of life: we do not exist as separate beings, but only in relationship to each other and to that greater community. This is, for us, the guiding "Principle of Relationality." Too often, we refuse to acknowledge the fact that we are all one humanity which is part of the greater family of all life on Earth, all connected together by cords of life and love that need to be honored and protected.  We are too often unwilling to open our hearts to the inherent worth of all life, and we fail to recognize, to our own detriment,  how our well-being is tied both to the well-being of all humanity and to that of all life on the planet.  As a result of our own actions, we are now faced with a growing environmental crisis.

In the face of this crisis, our hearts break when we see the callous disregard towards the land, the forests and trees, and the rivers and seas.  We  weep when we witness the suffering of living creatures, great and small.  We gasp when we realize how many beautiful and precious

5

ecosystems are threatened with collapse. And we recoil from the wanton cruelty of those exercising political and economic control.  Seeing all this, we are all called to heal our broken relationship with nature and to heal our broken relationships with each other.

2)      Indeed, humans have been inflicting untold damage on the environment and thereby on our own human communities.  In this regard, communities worldwide, including those in New Jersey,  are struggling  to find ways to heal the damage and create more sound relationships with each other and with the environment. It is thus imperative that we seek and find pathways to real healing of our broken relationships and remediation of the harm we have inflicted on each other and all life.  Such a "Principle of Healing" certainly encompasses and supports many established legal principles of "remediation," as embodied, for instance, (and as relevant to the present matter) in the New Jersey State Constitutional and legal provisions governing how monies collected in settlements relating to Natural Resource Damages  must be used to repair as a "first priority" the harm inflicted. *See, e.g.,* NJ Constitution, Article VIII, Section II, paragraphs 2 and 9.

The environmental contamination in this matter has been widespread and represents but one example of a larger disregard – indeed, an often callous disregard – for the value of both human and non-human life – and a willful denial of how human life is interdependent with that of the greater life of the planet. As a result, the importance of the Settlement between the parties cannot be underestimated in the face of the negative impacts on New Jersey communities and on the environment by the pervasive PFAS contamination that it is at the heart of this matter.

3)      Given, as outlined above, that we exist only in relationship with each other and nature, and that we have overriding responsibilities to bring reverence and healing into all that we do, it follows that we are also called to give back with generosity to each other and to the

greater community of life as we seek to mitigate and heal the harm that we have done.  For us, this is the "<u>Principle of Reciprocity</u>,"  which is, in the end, the ultimate foundation for many legal actions and remediation efforts.

4)    Finally, we are committed to "<u>Principles of Environmental Justice</u>." These Principles of Justice recognize both: (i) the heavy and often disproportionate burden born by so many communities in the face of environmental degradation heaped upon them, often with a callous disregard; and (ii) how such communities are often disenfranchised and do not have a voice either in seeking remediation and  healing or, more broadly, in seeking to address the injustices that have been inflicted upon them and upon the environments in which they live.

It is therefore imperative, as a matter of Environmental Justice, that there be governmental transparency in all legal proceedings addressing the environmental impacts on communities and that the communities be empowered to raise and have their voices heard.   These mandates of Environmental Justice certainly are directly relevant to the Judicial Consent Order here and the impact of the PFAS contamination on Carneys Point Township and other communities in New Jersey.

## 2.    APPLICATION OF OUR GUIDING PRINCIPLES TO THIS MATTER

We submit that all of the Guiding Principles just outlined – Responsibility, Relationality, Healing, Reciprocity and Environmental Justice – are material to the Court's decision whether to grant the Intervenor's application to modify the Judicial Consent Order.   In this regard, we urge the Court not only to rule in favor of Intervenor, based on a straight-forward reading of the existing and applicable New Jersey Constitutional and legal provisions, but to expressly affirm how the Township's demands for modifications to the Judicial Consent Order are rooted in and reflect these broader Guiding Principles.

### (a)    INTERVENOR'S LEGAL ARGUMENTS

We will not repeat all the arguments set forth in the Intervenor's Brief. It is important for our submission, however, to underscore a few key points.

Specifically, as Intervenor correctly argues, the State has set forth a comprehensive scheme not only whereby all litigation recoveries are deposited into the State's General Fund (N.J.S.A 52:18A-8 and 18-19), but more specifically whereby a "special account in the General Fund" has been created for all natural resource damages revenue derived from settlements, as here, "relating to natural resource damages collected by the State in connection with claims based on environmental contamination." NJ Constitution, Article VII, Section II, paragraph 9.

Even more directly relevant and conclusive here, the Constitution goes on to expressly mandate that the "first priority" use of such revenues for the repair or restoration of damaged natural resources – or to " permanently protect" such resources – shall be "in the immediate area in which the damage to the natural resources occurred in connection with the claim for which the money were recovered." *Id.* (Collectively, referred to hereinafter as either the "2017 Natural Resource Damages Amendment" or simply as the "Natural Resources Damages Provisions").

These Provisions make crystal clear, as Intervenor notes, that Natural Resource Damage recoveries "cannot be used for general statewide purposes," and that the Judicial Consent Order here, as presently drafted, thereby runs afoul of these Constitutional Provisions by not ensuring that the Settlement Payments are allocated "per Site" – that is, as the Constitution demands, to the "immediate area in which the damage to the natural resources occurred."

As presently written, the Judicial Consent Order is blatantly unconstitutional; and pollution impacted municipalities, including Carneys Pont Township, are potentially being improperly

8

denied the remediation in their communities and the ability to be involved in restoration projects for their communities.

In short, as Intervenor argues, the Judicial Consent Order must be modified; full transparency of how the Settlement Payments are going to be allocated must be made clear and be made public; Payments must be allocated to those locations where the damage was sustained; and the Department's argument that it should be allowed unbridled discretion to use the Payments as it sees fit needs to be summarily rejected.

(b)    <u>The Natural Resource Damages Provisions</u>

We urge the Court to recognize that the 2017 Natural Resource Damages Amendment to the State Constitution implicitly incorporate SOEL's Guiding Principles outlined above in addressing the restoration of environmental degradation and damage.

First, in seeking to ensure that remediation efforts will be  focused on the area where the harm has been inflicted, the Natural Resource Damages Constitutional Amendment is looking to ensure that true healing takes place in the communities and ecosystems impacted.  We are talking here not simply about restoration, but about application of the Principles of Healing, Responsibility and Relationality as to  a particularly toxic pollutant in a particular community.

Indeed, the Settlement between the Parties arises from the cost to remediate PFAS contamination, a "forever chemical" that is extremely toxic to a wide range of species, human and non-human. Such forever chemicals are linked to a wide range of adverse effects in both humans and laboratory animals.  Based on recent research, it appears that PFAS can build up in the tissues of mammals, birds, fish and reptiles, causing health problems like liver, thyroid, reproductive damage, reproductive and developmental problems, and weakened immune systems.  Animals can be exposed by drinking contaminated water, eating contaminated plants,

9

and preying on other contaminated animals. Plants can also absorb PFAS, leading to contamination that can be passed up the food chain to animals and even to humans. In this regard, studies have found extremely high levels of PFAS in plants growing in contaminated areas.[1] Many of these observations were recognized by the State in their Third Amendment Complaint in this matter.

Given the toxicity of PFAS and the challenges posed by PFAS restoration in contaminated ecosystems, the Court must require the Settlement Payments here be used for Natural Resource Damage restoration projects at ground zero pollution-impacted municipalities around each Industrial Site and not for general, unspecified environmental purposes throughout the State as proposed by the Settling Plaintiffs. The Settlement Payments must be placed into the larger legal and cultural context of our collective commitment to take "responsibility" for our behaviors as the 2017 Natural Resource Damages Constitutional Amendment seeks to do, and which SOEL promotes.

By making sure these funds are dedicated to the Natural Resource Damages restoration projects they are intended for, the Court will be acknowledging the interdependence humans have with the world we are contaminating and our responsibility to restore the ecosystems we are polluting. This is the Principal of Relationality that SOEL espouses.

Second, we believe it is important to note the commitment, as reflected in New Jersey law, to work to heal our broken relationships with the natural world of which we are a part. In this regard, the law as it exists supports application of SOEL's Guiding Principles to this matter.

---

[1] *See* https://www.ewg.org/news-insights/news-release/2023/09/ewg-study-humans-serve-sentinels-forever-chemicals-harm-wildlife; and https://www.sciencedirect.com/science/article/abs/pii/S0048969723045643?via%3Dihub.

Third, a ruling in favor of Intervenor is also compelled by considerations of Environmental Justice. Such considerations of Justice are clearly relevant here where the Department is not being transparent as to its intended uses of the Settlement Payments and, in fact, effectively seeks to disenfranchises the Intervenor (and other groups and communities) so that the Department itself will have the virtually exclusive and legally unsupportable discretion to use the Settlement Payments in this matter for any purposes it chooses without legislative authority or oversight.

We recognize that the Department will likely assert that the Court must give deference to the Department's expertise and discretion in how to use the Settlement Payments. Such deference, however, is severely limited by the Natural Resource Damages Provisions in the State Constitution and by the overriding need for healing and environmental justice. Indeed, the need for Natural Resource Damages restoration is *not* some amorphous and theoretical need, but a need that is specific to particular areas of contamination and specific communities as discussed in detail by Carneys Point Township in its application for intervention. The Department simply does not have the authority to override such specific needs.

Finally, and more generally, the Constitutional provisions relating to Natural Resource Damages, and related legal provisions, reflect a growing statewide policy that expresses a deep concern for the fragility of the New Jersey environment. Indeed, these legal provisions implicitly embrace the Principles of Reverence and Relationality that SOEL promotes, by acknowledging how human communities and the environment are interdependent and by trying to address how deep the need is for healing for both our human communities and for the larger community of life and the environment, which has been so badly damaged in so many areas of the State.

11

## **CONCLUSION**

For the reasons set forth herein, The Society for Earth Law respectfully requests that the Court grant the Intervenor's application to modify the Judicial Consent Order and that, in so granting, the Court acknowledge the larger issues at play here as reflected in SOEL's Guiding Principles.

THE SOCIETY FOR EARTH LAW

By: /s/ Tyler E. Baker

Tyler E. Baker, Esq.
*Counsel for Amicus*

Sheppard Mullin Richter & Hampton, LLP
30 Rockefeller Plaza,
New York, NY 10112-0015
TBaker@sheppardmullin.com
212-634-3048

December 11, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 11, 2025, I caused to be filed a true and correct copy of the foregoing AMICUS BRIEF IN SUPPORT OF INTERVENOR CARNEYS POINT TOWNSHIP'S REQUEST FOR WRIT OF MANDAMUS and accompanying exhibits with the United States District Court for the District of New Jersey, which was served on all counsel of record by filing it electronically through this Court's ECF System.

*/s/ Tyler E. Baker*
Tyler E. Baker

1