**JENNIFER DAVENPORT**
**ATTORNEY GENERAL OF NEW JERSEY**
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625-0093
*Attorney for Plaintiffs*
By:    Gwen Farley
       Deputy Attorney General
       Attorney ID No. 000081999
       Ph. (609) 376-2740
       Gwen.Farley@law.njoag.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and THE ADMINISTRATOR OF THE NEW JERSEY SPILL COMPENSATION FUND, Plaintiffs, | Case No.: 2:19-cv-14758-RMB-JBC<br>1:19-cv-14765-RMB-JBC<br>1:19-cv-14766-RMB-JBC<br>3:19-cv-14767-RMB-JBC |
| v. | **STIPULATION AND ORDER BETWEEN THE STATE AND PARTICIPATING COUNTIES REGARDING PLAINTIFFS' MOTION TO APPROVE JUDICIAL CONSENT ORDERS** |
| E. I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; THE 3M COMPANY; DUPONT SPECIALTY PRODUCTS USA, LLC; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; and "ABC CORPORATIONS" 1-10 (NAMES FICTITIOUS), Defendants. | |

1

**THIS MATTER** having been brought to the Court with respect to Plaintiffs New Jersey Department of Environmental Protection, its Commissioner, and the Administrator of the New Jersey Spill Compensation Fund's (collectively, "Plaintiffs" or "State") Motion to Approve Judicial Consent Orders ("JCOs")[1] With Settling Defendants[2] in the above-captioned actions; and

**WHEREAS,** the State filed its motion for an Order to approve the proposed JCOs on November 21, 2025 (Docket No. 746) ("Plaintiffs' Motion"); and

**WHEREAS,** 18 Counties[3] ("Participating Counties") objected to Plaintiffs' Motion and said JCOs; and

**WHEREAS,** Plaintiffs and Participating Counties (collectively, the "Parties") mediated before the Honorable Magistrate Judge Joel Schneider (Ret.) in order to explore terms and conditions upon which the Participating Counties would agree not to oppose the Plaintiffs' Motion and the proposed JCOs; and

---

[1] In addition to the above-captioned matters, the JCOs also resolve *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873 (D.S.C.) ("AFFF MDL"), Member Case No. 2:19-cv-02199, as to Settling Defendants only.

[2] Capitalized terms not herein defined shall have the same meanings as defined under the JCOs.

[3] The 18 Counties are Bergen, Burlington, Camden, Cape May, Cumberland, Gloucester, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Ocean, Passaic, Salem, Somerset, Sussex, Union, and Warren.

2

**WHEREAS,** the Parties agree to the terms herein to avoid a protracted dispute regarding approval of the proposed JCOs; and

**WHEREAS,** the Parties agree that the terms herein are fair, reasonable, and in the best interest of the Parties, and that they will take the actions necessary to implement these terms; and

**WHEREAS,** the Parties now seek an Order memorializing the terms and conditions upon which the Counties agree not to oppose Plaintiffs' Motion;

**IT IS** on this __24th__ day of June 2026 **ORDERED** as follows:

1.      In connection with the instructions that the State will provide the Settling Defendants for paying the Settlement Payments to Settling Plaintiffs under the JCOs, the State agrees to direct the Settling Defendants to pay the Participating Counties **$90,000,000.00** in annual installments (the "Settlement Funds") pursuant to the Settlement Payment Schedule below. The Settlement Funds shall be paid into a Qualified Settlement Fund ("QSF" or the "Trust") organized by the Participating Counties under South Dakota law. For the avoidance of doubt, the foregoing amount will be taken out of the Settlement Payments due to the Settling Plaintiffs under the JCOs, and nothing herein alters the Settling Defendants' rights or obligations under the JCOs or creates any obligation of the Settling Defendants to the Participating Counties.

3

2.    The Participating Counties agree to organize the QSF consistent with the following parameters:

a.    Use of the QSF guarantees a fiduciary relationship between the beneficiaries and an ABA certified trust administrator that has managed future claims and recurrence funds inside QSFs for more than twenty-five (25) years. A corporate trustee and special master will be appointed by the Participating Counties (subject to consent by the State, which will not be unreasonably withheld) that is bound by the terms of the Trust.

b.    The South Dakota Court will have continual jurisdiction and provide supervision over the Participating Counties to ensure compliance with the settlement terms written into the Trust by addendum, which include the powers of an appointed special master ("Special Master"), segregation of subaccounts for claimants, and defined guidance regarding use of the Settlement Funds.

c.    The Special Master will also oversee and approve the Participating Counties' use of the Settlement Funds to ensure

4

such use meets the Trust's stated purpose. The Special Master will also adjudicate "special needs" claims as described below and any disputes arising from or relating to administration of the fund.

d.    The QSF will be sealed and its assets protected for the benefit of the Participating Counties.

e.    All fees, costs, and expenses, including but not limited to administration of the QSF, will be agreed to and paid by the Participating Counties through the funding received and will not be borne by the State. This amount shall be treated as paid to the QSF from the Settlement Payments allocated to the Costs, Fees, and Punitive Damages Payments by the Settling Defendants.

f.    The Participating Counties shall provide the State with all QSF and trust-related documents to ensure compliance with the terms of the JCOs and this Order and the State shall review them and approve them to the extent consistent with the JCOs and this Order.

3.    The State will direct the Settling Defendants to make payments of the

Settlement Funds into the QSF on an annual basis pursuant to the following

Settlement Payment Schedule:[4]

| PAYMENT SCHEDULE | |
|---|---|
| Year One | $10,000,000 |
| Years Two – Four | A total of $40,000,000 will be paid into the QSF in this three-year period from the 3M payments of the New Jersey Leadership Payment. The payments to the Counties will be made in three annual installments paid in a proportionate share between the State and County Funds to be determined by the total Leadership Payments made by 3M each year (e.g., if there is a total Leadership Payment of $80 million, fifty percent (50%) of each year's payment will be directed to the County QSF during years two, three and four). |
| Year Five | $10,000,000 |
| Year Six | $10,000,000 |
| Year Seven | $10,000,000 |
| Year Eight | $10,000,000 |

---

[4] Nothing herein alters the requirements of the JCOs with respect to holding of Settlement Payments in escrow before the JCOs become final and non-appealable. For any Settlement Payments funded into escrow, the State would release the appropriate amount under this Order to the QSF after such amount is released from escrow.

4.    The State and the Participating Counties agree that the terms of the QSF (and the jurisdiction of the court in South Dakota) apply only to the Participating Counties and that in no way is the State bound by the QSF or the laws of the State of South Dakota and that the State is not subject to the jurisdiction of the South Dakota Court. The State and the Participating Counties agree that, if there is any dispute between them regarding the proper use or application of the Settlement Funds, the amount that could revert to the State (if any), and/or the terms of this Order or their construction, the laws of the State of New Jersey shall apply to all such disputes and New Jersey shall be the sole venue where any such dispute(s) could be heard.

5.    The Participating Counties will use available Settlement Funds for the sole purpose of investigating and remediating PFAS contamination at county-owned fire training academies and airports where PFAS contamination is known or suspected (a "County Property"), consistent with U.S. Treasury Regulations section 1.162-21(e)(4)(i) and the Settling Plaintiffs' obligations under the JCOs. If a Participating County identifies another county-owned property that requires PFAS investigation or abatement work, the Participating County will identify the property and PFAS concern to DEP and request that DEP approve the inclusion of such project as an agreed upon use of PFAS abatement funds. DEP will not unreasonably withhold consent to such a request and will respond to any such

7

request within 60 days. Additionally, each Participating County agrees to retain (or confirm retention of) a Licensed Site Remediation Professional ("LSRP") to investigate and remediate the extent of PFAS contamination associated with a County Property.

6.    To incentivize the Participating Counties to immediately begin investigating and remediating PFAS contamination, the allocations to all Participating Counties will be on a "use it or lose it basis," with any leftover PFAS Abatement Funds, after an agreed upon time period, reverting to the QSF to be used for any Counties' "special needs" claims (as defined in the QSF) for additional PFAS Abatement funding. This structure will ensure that the Participating Counties with more significant PFAS contamination concerns are not prejudiced by other Participating Counties with less exposure.

7.    Under the terms of the QSF, each Participating County will have an agreed upon term to use any allocated Settlement Funds for PFAS Abatement from the date such Settlement Funds are allocated to the Participating County. Upon the expiration of an agreed upon time period to be set forth in the QSF, unused funds will revert to separate QSF "special needs" funds, from which any Participating County can make needs-based claims for additional PFAS Abatement projects to the Special Master. Such "special needs" funds will remain in the QSF until its

8

expiration, at which time the Participating Counties agree that any remaining funds will revert to the DEP.

8.     The Participating Counties and the QSF Special Master will report to the DEP annually on the status of the Settlement Funds expended, funds appropriated, the projects approved, and the status of all ongoing work for each of the Participating Counties' QSF funds and the special needs funds. DEP will have the right to audit the Participating Counties' expenditures to ensure that the Settlement Funds are expended on PFAS Abatement in conformance with the terms of the JCOs. The Participating Counties shall fully cooperate with Settling Plaintiffs, including by providing any reasonably requested documents, data, communications, and information, to enable Settling Plaintiffs to comply with their obligations to Settling Defendants under the JCOs.

9.     The QSF will remain active for a total of ten (10) years for administration, with settlement payments coming into the fund for the first eight (8) years pursuant to the above Settlement Payment Schedule. The Participating Counties may reallocate funds among the Counties upon mutual agreement based on a Participating County's ability to demonstrate its need for additional funding, subject to approval by the Special Master. After the final Settlement Funds deposit in year eight (8), each Participating County will have one year to use or commit the use of the funds as prescribed. The QSF will expire by its own terms at the end of year

9

nine (9), with all remaining unused funds reverting to the DEP's PFAS Abatement Fund.

10. The various State/DEP funds and remedies already available to the Participating Counties, as described more fully in the JCOs, will remain available without prejudice if, at any point, any Participating County's necessary expenditures for PFAS contamination, investigation and abatement exceed the funds available to the Participating Counties in the QSF.

11. Each Participating County and the DEP will negotiate and enter into an Administrative Consent Order ("ACO") to govern the remediation at a County Property. The specific terms of each ACO must be negotiated based on the particular circumstances present at each County Property. Each ACO will provide:

      a.    Remediation at a County Property will be conducted by the respective Participating County and will not be subject to any traditional or direct DEP oversight, provided the remediation remains in compliance with the timeframes set forth in the ACO.

      b.    The DEP will consider the Participating County's share of the costs agreed to in the ACO as fully resolving the Participating County's liability under the Spill Act and CERCLA to the State for PFAS contamination at the County Property at issue. The

10

Participating County will receive contribution protection under both the Spill Act and CERCLA as to PFAS contamination at the respective County Property pursuant to N.J.S.A. 58:10-23.11f(a)(2)(b); 42 U.S.C. § 9613(f)(2), and the ACO will explicitly state that contribution protection applies. The Participating County will also receive a covenant not to sue for natural resource damages ("NRD") arising from PFAS contamination at the respective County Property.

c.   The ACO will provide that each Participating County may pursue claims against third parties (including claims against the United States or other Responsible Parties in contribution under CERCLA, the Spill Act, or otherwise) for the Participating County's portion of past or future costs expended to remediate (including investigate) a County Property, in addition to any other damages the Participating County may seek, except with respect to the Settling Defendants or any other of the Parties. If a Participating County recoups any funds from a third-party, the

11

County will notify DEP, and in no event shall there be a double recovery by any Participating County. [5]

d.  The State may pursue claims against third parties (including claims against the United States or other Responsible Parties under CERCLA or the Spill Act, or otherwise) for DEP's portion of the costs expended to remediate (including to investigate) any County Property, in addition to any other costs or damages (including NRD) the State may seek, except with respect to the Settling Defendants or any other of the Parties.

i.  If the State and any given Participating County agree and so choose, the State can bring CERCLA or Spill Act claims for all past and future costs (including the County's portion of the costs) expended to investigate and remediate a County Property and, in this instance, the State and the respective Participating County will allocate any recoveries between the State and the Participating County based on the relative percentage of costs spent at the County Property at issue.

---

[5] Nothing herein or in the ACO will alter the contribution-protection of the Settling Defendants under the JCOs.

12

ii.     If both a Participating County and the State choose to bring separate contribution and cost recovery actions, they will endeavor to cooperate with one another in prosecuting such claims, and in this instance, the State will not resolve or release its claims without providing the Participating County with an opportunity to join in such a resolution.

12.     The Participating Counties acknowledge that PFAS-related claims that the Participating Counties might otherwise have against the Settling Defendants or other Released Entities under the JCOs are released and precluded as described in the JCOs.

13.     Through this stipulation, the Participating Counties hereby express their unqualified support for approval of the JCOs and withdraw all previously filed objections set forth in any papers filed in any of the above-captioned actions by any Participating Counties.

14.     Upon entry of this Order, the Participating Counties waive their rights to oppose the State's Motion to Approve Judicial Consent Orders With Settling Defendants.

15. Notwithstanding any other provision of this Stipulation, if the JCOs are not approved by this Court, or if this Court's approval is reversed on appeal (if any), the Parties' obligations herein are null and void.

16. This Court shall retain jurisdiction to enforce the terms of this Order.

Respectfully submitted,

**JENNIFER DAVENPORT
ATTORNEY GENERAL
OF NEW JERSEY**
*Attorney for Plaintiffs*

By: */s/ Gwen Farley*
Gwen Farley, Esq.
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, New Jersey 08625-0093


**KEFE LAW FIRM**
*Attorneys for Cape May County,
Cumberland County, Gloucester
County, Hunterdon County, Middlesex
County, County of Monmouth, Passaic
County, Salem County, Somerset
County, Sussex County, County of
Union, & Warren County*

By: */s/ John E. Keefe, Jr.*
John E. Keefe, Jr., Esq.
Anthony J. Tagliaferro, Esq.
Galleria
2 Bridge Avenue
Building 6, 2nd Floor, Suite 623
Red Bank, New Jersey 07701

**KELLEY DRYE &
WARRREN LLP**
*Special Counsel to the Attorney
General*

By: */s/ Geoffrey W. Castello*
Geoffrey W. Castello, Esq.
7 Giralda Farms, Suite 340
Madison, New Jersey 07940

William J. Jackson, Esq.
515 Post Oak Blvd. Suite 900
Houston, Texas 77027


**BROWN & CONNERY, LLP**
*Attorneys for Camden County*

By: */s/ William M. Tambussi*
William M. Tambussi, Esq.
360 North Haddon Avenue
Westmont, New Jersey 08108

Michael J. Watson, Esq.
6 North Broad Street
Woodbury, New Jersey 08096

15

**STAG LIUZZA, LLC**
*Attorneys for Bergen County & County of Mercer*

By: */s/ Michael G. Stag*
Michael G. Stag, Esq.
Ashley M. Liuzza, Esq.
One Canal Place
365 Canal Street, Suite 2850
New Orleans, Louisiana 70130

**MALAMUT LAW**
*Attorneys for County of Burlington*

By: */s/ Adam S. Malamut*
Adam S. Malamut, Esq.
Anthony Drollas, Esq.
457 Haddonfield Road, Suite 500
Cherry Hill, New Jersey 08002

**WEINER LAW GROUP LLP**
*Attorneys for County of Morris*

By: */s/ William G. Johnson*
William G. Johnson, Esq.
Donald A. Klein, Esq.
Nicholas R. Wall, Esq.
629 Parsippany Road
Parsippany, New Jersey 07054

**PARKER MCCAY P.A.**
*Attorneys for County of Ocean*

By: */s/ George M. Morris*
George M. Morris, Esq.
Dennis P. Frazier, Esq.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054

**SO ORDERED** the 24th day of June 2026,

Renée Marie Bumb
CHIEF, UNITED STATES DISTRICT JUDGE

16